UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   2:10-cv-07405-JHN–PJW                              Date:  December 5, 2011
Title:     AdvoCare International, L.P. v. Jessica Hardy

Present: The Honorable JACQUELINE H. NGUYEN

| Alicia Mamer | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

Attorneys Present for Plaintiffs:        Attorneys Present for Defendants:
         Not Present                                  Not Present

**Proceedings:** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [78] (In Chambers)

The matter before the Court is Defendant AdvoCare International, L.P. and Custom Nutrition Laboratories, LLC's ("Defendants") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"), filed on August 22, 2011. (Docket no. 78.) The Court has considered all pleadings and oral argument on November 28, 2011. For the reasons herein, the Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

On or about January 29, 2008 Plaintiff entered into an endorsement agreement with AdvoCare, whereby AdvoCare agreed to provide various nutritional supplement products to Plaintiff. (First Amended Complaint ("FAC") ¶ 8.) Between January 2008 and June 29, 2008, Plaintiff consumed Defendants' products, including Arginine Extreme and Nighttime Recovery, on a regular basis and in accordance with the provided instructions. (FAC ¶ 10.) During this time, Plaintiff was training for the 2008 U.S. Olympic Swim Team Trials and competing in various domestic and international swimming meets. (*Id.*) During this time Plaintiff also submitted to a number of drug tests and always tested negative for any banned

---

[1] The facts summarized herein are not in dispute unless indicated otherwise.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. 2:10-cv-07405-JHN–PJW | Date: December 5, 2011 |
| Title: AdvoCare International, L.P. v. Jessica Hardy | |

substance. (*Id*.) Between June 29 and July 6, 2008, Plaintiff competed in the U.S. Olympic Swim Team trials while continuing to use Defendants' products pursuant to the recommendations. (FAC ¶ 11.)

On July 4, 2008, Plaintiff provided a urine sample for drug testing. (FAC ¶ 12.) On July 21, 2008, Plaintiff was informed that her urine sample tested positive for clenbuterol, a banned substance, and she was disqualified from participating in the 2008 Olympics in Beijing. (*Id.*) Plaintiff subsequently retained Anti-Doping Research, Inc. ("ADR") to test Defendants' products for the presence of clenbuterol. (FAC ¶ 14.) Dr. Don Catlin, founder and CEO of ADR, analyzed Arginine Extreme 41 times for clenbuterol, and found the presence of clenbuterol twice at "trace" levels from testing done between July 29, 2008 and October 17, 2008. (Decl. of A. Dallas Wait ("Wait Decl.") ¶ 16; Decl. of Adam LeBerthon ("LeBerthon Decl.") Ex. B ¶¶ 4.4, 4.4.1, & 4.4.2.) On October 17, 2008, ADR tested two different samples of Arginine Extreme that came from the same packet. (Wait Decl. ¶ 19(b).) Although one of the samples tested positive for clenbuterol, a duplicate analysis of the same sample analyzed at the same time showed no clenbuterol. (*Id.*) Dr. Catlin's testing of Nighttime Recovery also revealed the presence of clenbuterol. (FAC ¶ 14.)

On September 25, 2008, Dr. George Maylin received a 4-gram packet of Arginine Extreme from Dr. Catlin, which he was asked to test for the presence of clenbuterol. (LeBerthon Decl. Ex. F ¶ 3.1.) On March 19, 2009, Dr. Maylin tested the product and also concluded that it contained clenbuterol. (*Id.* ¶ 4.2.)

Dr. Catlin is a graduate of Yale University and the University of Rochester School of Medicine. (Decl. of Eric C. Strain ("Strain Decl.") Ex. C, at 278-79.) Dr. Catlin was a resident at both the University of California at Los Angeles, and the University of Vermont at Burlington. (*Id.*) Dr. Catlin spent 25 years as the Director of the UCLA Olympic Analytical Laboratory, which he founded, and in that capacity oversaw and/or conducted all drug testing for the 1984 Olympic Games in Los Angeles, the steroid testing for the 1996 Olympic Games in Atlanta, and all of the testing for the 2002 Olympic Games in Salt Lake City. (*Id.* at 72-76.) In 2005, he left to found Anti-Doping Research in Los Angeles. (*Id.*) It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | 2:10-cv-07405-JHN–PJW | Date:  December 5, 2011 |
| Title: | AdvoCare International, L.P. v. Jessica Hardy | |

undisputed that Dr. Catlin is one of the world's leading doping experts, and that he is an expert in identifying substances by procedures including Liquid Chromatography Tandem Mass Spectrometry – better known as "LC/MS/MS" – which is the procedure both Drs. Catlin and Maylin used to test Defendants' products.  (*Id.* at 6; Strain Decl. Ex. D.)  According to Dr. Catlin, LC/MS/MS is the "state of the art method" for testing clenbuterol, in any form.  (Strain Decl. Ex. C, at 7)  It is also the method used by both the UCLA Olympic Analytical Laboratory and ADR.  (*Id.*)

Dr. George Maylin has both an MS and PhD in pharmacology from Cornell University.  (Strain Decl. Ex. D.)  He was the Director of the New York State Racing and Wagering Board Drug Testing and Research Program at Cornell University from 1971 to 2010, when he retired.  (*Id.*)  Dr. Maylin has used the LC/MS/MS testing method for 20 years.  (*Id.*)

### II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The substantive law governing a claim determines whether a fact is material.  *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see also Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("Material facts are those which may affect the outcome of the case.") (internal citations omitted).

At the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all reasonable inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31.  The evidence presented must be admissible.  Fed. R. Civ. P. 56(c)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 2:10-cv-07405-JHN–PJW            Date: December 5, 2011

Title:     AdvoCare International, L.P. v. Jessica Hardy

### III. DISCUSSION

#### A. Admissibility of Expert Testimony

Defendants move for summary adjudication, arguing that Plaintiff cannot present any admissible evidence in support of her claims because Plaintiff's expert testimony fails to comply with Federal Rule of Evidence 702. (Mot. 1.) Plaintiff contends that the expert testimony is admissible and that Defendants' arguments go to the weight the jury should give the experts' testimony – not their admissibility. (Opp'n 17.)

The admissibility of expert testimony is governed by Rule 702, as amended in 2000 to reflect the Supreme Court's holdings in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) (hereinafter "*Daubert I*"), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert I*, the Court charged trial judges with the responsibility of acting as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert I*, 509 U.S. at 589. Rule 702 allows for expert testimony if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 requires, *inter alia*, that a proposed expert witness's testimony be the "product of reliable principles and methods." Fed. R. Evid. 702. Under Rule 702, expert testimony is liberally admitted. *See* Fed. R. Evid. 702 Adv. Comm. Notes (2000 amends) ("A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").

Pursuant to *Daubert I*, "the district court judge has a 'gatekeeping role' and must exclude expert scientific testimony that is not sufficiently reliable under Fed. R. Evid. 702. Expert testimony is inadmissible if there is 'too great an analytical gap between the data and the opinion offered.'" *Newkirk v. ConAgra Foods Inc.*, 2011 WL 2421144 at *1 (9th Cir. 2011) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). In order to assess reliability of expert testimony, *Daubert I* set forth a non-exclusive list of factors a court may consider. These factors include: (1)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | 2:10-cv-07405-JHN–PJW | Date:  December 5, 2011 |
| Title: | AdvoCare International, L.P. v. Jessica Hardy | |

whether the expert's theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether the theory or technique is "generally accepted" in the scientific community. *See Daubert I,* 509 U.S. at 593-94.  However, the Court's inquiry should be "flexible." *Id.*

Dr. Catlin and Dr. Maylin utilized an LC/MS/MS tool for each test. (Strain Decl. Ex. C ¶ 4.3; Strain Decl. Ex. D ¶ 11.) Plaintiff contends that LC/MS/MS is a widely used testing method and that there is nothing novel or unreliable about LC/MS/MS. (Opp'n 16.) Defendants do not dispute this. In fact, Defendants' own non-designated expert also used LC/MS/MS to test Defendants' products. (*See* Strain Decl. Ex. E.) In addition, at least one court has found that LC/MS/MS is generally accepted in the field of analytical and forensic chemistry. *See United States v. Vitek Supply Corp.*, 144 F.3d 476, 485 (7th Cir. 1998). The Court agrees, and finds that LC/MS/MS is a method generally accepted in the scientific community.

Here, during independent LC/MS/MS testing performed by both Dr. Catlin and Dr. Maylin, clenbuterol was found in AdvoCare Arginine Extreme. (Strain Decl. Ex. C ¶¶ 4.1-4.5; Strain Decl. Ex. D ¶¶ 10-12.) Nevertheless, Defendants argue that their testimony should be excluded because (1) the expert reports lack reliability because their test methods were not validated; and (2) the testing methods are not reproducible. (Mot. 13, 17.) The Court considers each of Defendants' arguments, in turn.

    1. **Reliability**

        a.    **Validation**

Defendants claim that Plaintiff's experts' testing methods are unreliable because they failed to perform a validation study. (Mot. 13.) Defendants cite to the international ISO/IEC Standard 17025 which states that "[t]he method developed shall have been validated appropriately before use." (*Id.* at 14.) While it is true

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | 2:10-cv-07405-JHN–PJW | Date:  December 5, 2011 |
| Title: | AdvoCare International, L.P. v. Jessica Hardy | |

that neither Dr. Catlin nor Dr. Maylin performed validation studies, Defendants fail to cite any authority requiring such studies to be performed in order for tests to be admissible. The Court's own independent search has similarly turned up no authority requiring validation studies. Thus, non-conformance with the international ISO/IEC standard is not – in and of itself – grounds to determine exclude expert testimony. *See Daubert I,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

### b. Revised Testing Methods

Defendants also attack Dr. Catlin's results on the grounds that Dr. Catlin revised his methods for clenbuterol testing four times. (Mot. 15.) Plaintiff acknowledges that while her experts used the same LC/MS/MS testing process throughout its testing of Defendants' supplements, the experts did adjust the internal standard ("ISTD") to improve the efficiency of the tests. (Strain Decl. Ex. C ¶ 4.3; Catlin Depo. 169:15-20.) "Changing an ISTD refers to altering the test chemicals in the sample solution, and/or their concentrations, that are added to maximize the test's sensitivity for detecting the target molecule." (*Id.*) Plaintiff contends, without dispute, that this is a normal and appropriate practice in analytical chemistry. (Catlin Decl. ¶ 2.6; Opp'n at 9.) As Plaintiff and its experts note, changing the ITSD would not allow a test to identify clenbuterol if it were not present. (*Id.*) As such, this argument does not provide a basis for excluding expert testimony.

### c. Positive Tests for Both Products

Defendants next argue that Dr. Catlin's results are unreliable because both Arginine Extreme and Nighttime Recovery tested positive for clenbuterol. (Mot. 16.) Defendants argue that Arginine Extreme and Nighttime Recovery are two entirely different products that use ingredients from different suppliers, and therefore conclude that it is "impossible" that both could contain clenbuterol. (Thomas Dollar Decl. ¶¶ 4-6; Mot. 16.) The Court disagrees. While it may be *unlikely* that both products were contaminated with clenbuterol, it is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | 2:10-cv-07405-JHN–PJW | Date:  December 5, 2011 |
| Title: | AdvoCare International, L.P. v. Jessica Hardy | |

"impossible." In fact, based on the expert testimony, a reasonable person could certainly find that the product did contain clenbuterol. Nevertheless, once again, this is an issue best dealt with during trial.

### d. Dr. Maylin's Data

Defendants next claim that Dr. Maylin's test results are unreliable because he failed to provide data summary reports and method validation studies. Defendants claim that it is therefore "impossible to assess Dr. Maylin's data quality or the reliability of the testing he performed" because he only attached a "partial data package" to his Expert Witness Report. (Mot. 17.) Nevertheless, Defendant has provided no citation to any authority that requires such information as a threshold for admissibility. The fact is that Dr. Maylin used the well-established LC/MS/MS testing method – a test that was also used by Defendants. Any doubt about Dr. Maylin's laboratory procedures is subject to debate at trial before a factfinder. *See, e.g.*, *United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), *rev'd on other grounds*, *U.S. v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).

### 2. Reproducibility

Defendants argue that Plaintiff's expert testimony is inadmissible because Dr. Catlin's testing methods are not reproducible. (Mot. 18.) While Dr. Catlin states that Defendants' products tested positive for clenbuterol on two separate occasions, Defendants contend that the results were "likely false positive[s.]" (*Id.*)

However, Dr. Catlin, in his expert report, states that people could reproduce his work "if they follow the steps." (Catlin Depo. 126:3-10.) Indeed, Dr. Catlin says, "We'd talk to them and help them." (*Id.*)

In support of their argument, Defendants cite to *Elock v. Kmart Corp*, 233 F.3d 734 (3rd Cir. 2000) and an unpublished case in support of their assertion. *Elock* is clearly distinguishable. First, the expert in *Elock* was an expert in vocational rehabilitation, a non-scientific field. *Id.* at 738. Moreover, the court noted that the expert's methodology was "subjective" and that "an expert trying to reproduce [the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. 2:10-cv-07405-JHN–PJW | Date: December 5, 2011 |
| Title: AdvoCare International, L.P. v. Jessica Hardy | |

expert's] methods would be lost." *Id.* at 747-48. Here, on the other hand, Dr. Catlin produced the methods, and has stated that they are reproducible. Defendants have provided no evidence to the contrary. All Defendants argue in their Motion is that different samples gave different results. However, this fact – according to Doctors Catlin and Maylin – is understandable because the samples are heterogeneous. (Mot. 18.) In short, Defendants have failed to provide any legitimate reason for this Court to exclude Dr. Catlin's and Dr. Maylin's expert testimony. The Court finds that their testimony is the product of reliable principles and methods, and may be admitted pursuant to Fed. R. Evid. 702.

**B.     Negligence Claim**

Defendants next move for partial summary judgment as to Plaintiff's first cause of action for negligence. (Mot. 18.) "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax,* 158 Cal.App.4th 983, 994 (2008)). Here, Defendants challenge the first element of Plaintiff's negligence claim. (*See* Mot. 18-19.)

    **1.     Negligence Related to the Sale of Arginine Extreme**

Plaintiff alleges, *inter alia*, that Defendants were negligent because they "[c]arelessly and negligently offered for sale or distribution to athletes products contaminated with clenbuterol." (FAC ¶ 21(c).) Defendants' expert, Daniel Spyker, acknowledged that clenbuterol is not approved by the F.D.A. and cannot be in products meant for human consumption in the United States. (Strain Decl. Ex. F, Daniel Spyker Depo. 28:23-30:17.)

"If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case." *Mill v. Los*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | 2:10-cv-07405-JHN–PJW | Date: December 5, 2011 |
| Title: | AdvoCare International, L.P. v. Jessica Hardy | |

*Angeles County Flood Control Dist.*, 8 Cal.3d 689, 702 (1973) (emphasis in original).

Plaintiff contends that an expert is not necessary for a jury to conclude that Defendants' actions fell below the standard of care, if clenbuterol – a substance illegal for human consumption in the United States – ended up in Defendants' supplements. (Opp'n 21.) In other words, Plaintiff argues that it is within the common knowledge of the jury that a banned substance should not have been in Defendants' supplement. (*Id.* at 22.)

The Court agrees with Plaintiff. Expert testimony is not required to establish the applicable standard of care because the fact that a banned substance should not be in a product meant for human consumption would be within the common knowledge of the jury.

### 2. Negligence Related to the Design and Manufacture of Arginine Extreme

Defendants argue that Plaintiff's negligence claim must fail because Plaintiff did not designate an expert to establish the applicable standard of care for designing, formulating and manufacturing nutritional supplements. (Mot. 20.) Defendant contends that "there are several specialized areas of knowledge that are utilized when manufacturing a nutritional supplement, such as the design and layout of manufacturing facilities to minimize contamination, the air management system of the manufacturing facility and protocols and procedures." (*Id.*) Defendant argues, therefore, that the standard of is "clearly outside the common knowledge of the jury." (*Id.*) The Court agrees, and finds that an expert is required to establish the standard of care for the design and manufacture of a product because those are not issues within the common knowledge of laymen. *Mill*, 8 Cal.3d at 702.

Therefore, Defendants' Motion is GRANTED with respect to Plaintiff's claims for negligence as contained in FAC Paragraphs 21(a)-(b), (d), (f), (g), (i), (j), (k), (l) and (n). It is DENIED with respect to Plaintiff's other assertions of negligence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. 2:10-cv-07405-JHN–PJW | Date: December 5, 2011 |
| Title: AdvoCare International, L.P. v. Jessica Hardy | |

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, and in the Alternative, Partial Summary Judgment is GRANTED in part, and DENIED in part. (Docket no. 78.)

**IT IS SO ORDERED.**

                           ___ : N/A
                        Initials of Preparer AM